# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
### No. 17-1897V
(Not to be published)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| VALERIE NEWPORT, | \* | |
| | \* | Special Master Corcoran |
| | \* | |
| | \* | Filed: March 12, 2019 |
| Petitioner, | \* | |
| v. | \* | |
| | \* | Attorney's Fees and Costs; |
| SECRETARY OF HEALTH | \* | Reasonable Basis. |
| AND HUMAN SERVICES, | \* | |
| | \* | |
| Respondent. | \* | |
| | \* | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

*Andrew D. Downing*, Van Cott & Talamante, Phoenix, AZ, for Petitioner.

*Amy P. Kokot*, U.S. Dep't of Justice, Washington, DC, for Respondent.

### DECISION AWARDING ATTORNEY'S FEES AND COSTS[1]

On December 7, 2017, Valerie Newport filed a Petition seeking compensation under the National Vaccine Injury Compensation Program ("Vaccine Program").[2] Petitioner alleged that she developed a constant tremor in her right arm after receiving the influenza ("flu") vaccine on September 19, 2016. Pet. at 1 (ECF No. 1). Unable to secure expert support for her claim, Ms.

---

[1] Although this Decision has been formally designated "not to be published," it will nevertheless be posted on the Court of Federal Claims's website in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012)). **This means that the Decision will be available to anyone with access to the internet.** As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Decision will be available to the public in its current form. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended, 42 U.S.C. §§ 300aa-10 through 34 (2012) [hereinafter "Vaccine Act" or "the Act"]. Individual section references hereafter will be to § 300aa of the Act.

Newport filed a Motion seeking dismissal of the Petition on January 10, 2019, and I subsequently dismissed the action. Decision, dated Jan. 11, 2019 (ECF No. 21).

A week later, on January 17, 2019, Petitioner filed a motion seeking a final award of attorney's fees and costs. Mot. for Final Att'ys' Fees and Costs (ECF No. 22) ("Mot."). Ms. Newport initially requested $21,329.00 in attorney's fees, though that amount increased to $27,141.00 to account for fees recently incurred in the briefing of the present motion. Mot. at 3; Pet'r's Suppl. to Mot. for Final Att'ys' Fees and Costs at 1, filed Feb. 20, 2019 (ECF No. 29) ("Supp.").[3] As the invoice attached to the Fees Motion demonstrates, two attorneys (primary counsel Mr. Downing and associate Courtney Van Cott) worked on the matter between mid-June 2017 and the present date, as well as two legal assistants. Ex. A to Mot. at 1–28. Petitioner also request costs in the total sum of $2,836.49, reflecting filing fees, copying, and the work of a single expert who consulted on the matter. *Id.* at 24–43.

Respondent filed an opposition to the Fees Motion on February 12, 2019. Opposition (ECF No. 27) ("Opp."). Respondent maintains that the case lacks reasonable basis, emphasizing that Petitioner's claim was, in the end, based solely upon her own statements rather than independent and objective factual evidence (and in so arguing, points out that Petitioner's counsel filed the Petition without fully vetting its evidentiary basis). Opp. at 8–10. Petitioner in turn submitted a reply contesting Respondent's arguments. Reply, filed Feb. 19, 2019 ("Reply") (ECF No. 28).

Now, having had the opportunity to review all filings in light of the medical record, I hereby (and for the reasons set forth below) GRANT Petitioner's motion.

I.     **Brief Factual Summary**

Ms. Newport was born on May 17, 1969. Ex. 2 at 1. Prior to vaccination, her medical history was significant for anxiety and an anxiety-related hand tremor, chronic obstructive pulmonary disease ("COPD"), and smoking. *See, e.g.*, Ex. 6 at 1–2; Ex. 7 at 1.

On September 19, 2016, Petitioner received the flu vaccine. Ex. 2 at 1. Less than two weeks later, on October 1, 2016, Petitioner was examined at an urgent care facility with complaints of a two-day history of fever, lightheadedness, and weakness—but reported no tremors or any of the other primary symptoms complained of in this action. Ex. 3 at 4–5. Petitioner, however, has maintained that such symptoms began within four or five days of vaccination. *See* Ex. 1 at 1 ¶3

---

[3] After Respondent filed an opposition to the fees request, Petitioner filed a reply, necessitating additional attorney time. She thereafter filed a supplement to the existing motion, increasing her fees request by $5,812.00 to account for additional work performed. Supp. at 1.

(Decl. of Valerie Newport). She was diagnosed with a febrile illness at the October 1st urgent care visit. Ex. 3 at 5.

During the remainder of October, Ms. Newport had five additional medical appointments—but she reported tremors at none of them. *See, e.g.*, Ex. 3 at 7–9; Ex. 7 at 1–4; Ex. 8 at 1–5, 9–10. At most, she informed a medical treater at one such visit that she had begun to experience cough and dyspnea the day after her flu vaccination. Ex. 8 at 3; *see also* Ex. 3 at 6–7; Ex. 7 at 1–4. She received additional treatment for shortness of breath and COPD (along with anxiety provoked by such instances) in early November. Ex. 7 at 14, 16; Ex. 12 at 136–39 (documenting Petitioner's assessment in the emergency room on November 13, 2016, for shortness of breath and anxiety, with associated flushing, elevated blood pressure, and lightheadedness).

It was only at the end of November 2016 that Ms. Newport first reported any right hand or arm tremors. Ex. 8 at 11–12. The complained-of tremor is confirmed in this record. *Id.* at 11. She was subsequently referred to a neurologist, whom she saw at the end of December, and to whom she stated that the tremor had existed for three months (consistent with the timing of her vaccination—but not with the October records, which record no instance of a tremor complaint). Ex. 6 at 1. Examination at this time again revealed a right upper extremity tremor, which was "also present with rest and action, but mild." *Id*. at 2. Ms. Newport was diagnosed with a tremor at that time, but the neurologist added that it "appear[ed] to be [an] enhanced physiologic tremor possibly due to anxiety and inhalers." *Id*. at 3.

In 2017, Petitioner continued to obtain treatment for her preexisting COPD. Although she often reported to treaters that her tremor had begun after receipt of the flu vaccine, and although the existence of the tremor was later confirmed on examination, it was also repeatedly noted that no neurological explanation for the tremor had been provided, and therefore it was properly attributed to anxiety (as it often subsided and did not appear to limit her functionality). *See, e.g.*, Ex. 7 at 27 (January 4, 2017 record); Ex. 4 at 17–18 (visit with neurologist in April 2017); Ex. 4 at 1 (May 2017 doctor's visit). No medical explanation for the tremor has otherwise ever been obtained, although it also has not been deemed neurologic in origin—and no treater has proposed that the flu vaccine caused it.

## II. Analysis

### A. *Reasonable Basis Standard*

I have in prior decisions set forth at length the criteria to be applied when determining if a claim possessed "reasonable basis" sufficient for a fees award. *See, e.g.*, *Allicock v. Sec'y of Health & Human Servs.*, No. 15-485V, 2016 WL 3571906, at *4–5 (Fed. Cl. Spec. Mstr. May 26, 2016), *aff'd on other grounds*, 128 Fed. Cl. 724 (2016); *Gonzalez v. Sec'y of Health & Human Servs.*, No. 14-1072V, 2015 WL 10435023, at *5–6 (Fed. Cl. Spec. Mstr. Nov. 10, 2015). In short, a petitioner can receive a fees award even if his claim fails, but to do so he must demonstrate the claim's reasonable basis through some objective evidentiary showing and in light of the "totality

3

of the circumstances," including all facts relevant to the to the case. *See Chuisano v. Sec'y of Health & Human Servs.*, 116 Fed. Cl. 276, 286 (2014) (citing *McKellar v. Sec'y of Health & Human Servs.*, 101 Fed. Cl. 303, 303 (2011)).

The Court of Federal Claims recently provided further illumination as to the standards to be used in evaluating whether the totality of the circumstances warrants a finding of reasonable basis. *Cottingham v. Sec'y of Health & Human Servs.*, 134 Fed. Cl. 567, 578 (2017), *appeal docketed*, No. 19-1596 (Fed. Cir. Feb. 26, 2019). As Judge Williams therein stated, a special master should consider "the novelty of the vaccine, scientific understanding of the vaccine and its potential consequences, the availability of experts and medical literature, and the time frame counsel has to investigate and prepare the claim." *Cottingham*, 134 Fed. Cl. at 574. The existence of an impending statute of limitations deadline, however, has been removed from consideration under the "totality of the circumstances" analysis, as it does not constitute an objective factor relevant to the claim's underlying validity. *Simmons v. Sec'y of Health & Human Servs.*, 875 F.3d 632, 636 (Fed. Cir. 2017); *see also Amankwaa v. Sec'y of Health & Human Servs.*, 138 Fed. Cl. 282, 289–90 (2018) ("special masters must not consider subjective factors in determining whether a claim has reasonable basis[,]" and should "limit [their] review to the claim alleged in the petition . . . based on the materials submitted") (quoting *Santacroce v. Sec'y of Health & Human Servs.*, No. 15-555V, 2018 WL 405121, at *7 (Fed. Cl. Spec. Mstr. Jan. 5, 2018)).

Despite the fact that an attorney may no longer point to the need to file before a looming statute of limitations cutoff date to justify acting on an otherwise objectively baseless claim, the nature and extent of an attorney's investigation into the claim's underpinnings, both before and after filing, can help illuminate what a claim's basis is (even if the attorney's conduct does not establish the *claim's* objective validity by itself). *See Cortez v. Sec'y of Health & Human Servs.*, No. 09-176V, 2014 WL 1604002, at *6 (Fed. Cl. Spec. Mstr. Mar. 26, 2014); *Di Roma v. Sec'y of Health & Human Servs.*, No. 90–3277V, 1993 WL 496981, at *2 (Fed. Cl. Spec. Mstr. Nov. 18, 1993) (citing *Lamb v. Sec'y of Health & Human Servs.*, 24 Cl. Ct. 255, 258–59 (1991)). Program attorneys are expected to conduct a reasonable pre-filing investigation—including an evaluation of the factual basis for the claim. *See Allicock*, 2016 WL 3571906, at *4; *Turner v. Sec'y of Health & Human Servs.*, No. 99-544V, 2007 WL 4410030, at *7 (Fed. Cl. Spec. Mstr. Nov. 30, 2007) ("[a] reasonable pre-filing inquiry involves an investigation of the factual basis for a Program claim or the medical support for a vaccine petition") (emphasis added)). If an attorney has proceeded with a Vaccine Act claim without, for example, engaging in an adequate record review (where those records would reveal a patent weakness), that failure is reasonably charged to the attorney.[4]

---

[4] By contrast, if an attorney only possesses *some* of the medical records, and has otherwise been diligent in review of it, the fact that a record item obtained *later* reveals that the claim should not be pursued would not retroactively taint the entire case. This is wholly consistent with the fact that cases can be filed with reasonable basis but lose it later on, as evidence bearing on its objective basis is obtained. *McNett v. Sec'y of Health & Human Servs.*, No. 99-684V, 2011 WL 760314, at *6 (Fed. Cl. Spec. Mstr. Feb. 4, 2011).

4

B.     *The Claim Possessed Reasonable Basis up to Dismissal*

Respondent's opposition to a fees award in this case has several components. He stresses the fact that in *Simmons*, the Federal Circuit clarified that the reasonable basis inquiry focuses on the claim, not the attorney's good-faith efforts to prosecute it. Opp. at 7 (citing *Simmons*, 875 F.3d at 635–36). He then maintains that this claim relied mostly on the Petitioner's assertions that her tremors were vaccine-related, rather than objective medical records—and to the extent that records referenced such an association, it was only because the *Petitioner* so informed treaters. Opp. at 8. He also maintains that the medical record does not corroborate allegations of a tremor beginning shortly after receipt of the flu vaccine (given that the October 2016 records make no mention of this symptom). And he observes that counsel was contacted by Petitioner almost six months before the case was filed, giving him ample time to investigate the claim before its filing. Because the vaccine at issue was administered in the fall of 2016, Petitioner's claim did not need to be filed before the fall of 2019, and thus counsel was under no pressure to file the case on a thin record. *Id.* at 9; Section 16(a)(1).

Petitioner argues in response that the claim possessed reasonable basis throughout its existence. She cites her declaration plus the medical records establishing that her tremor was observed by medical treaters (along with memorialized instances in which she informed treaters that the tremor had existed from the time of vaccination). Reply at 3–7.[5] She then maintains that "the influenza vaccination is notorious for neurologic injury," referencing the kinds of injuries that have in the Program been so associated (although she cites no cases involving the specific injury alleged in this case). *Id.* at 7. Petitioner's original fees motion also set forth some literature support for the conclusion that "dystonia," or abnormal muscle movement, could be infectious in origin (suggesting that vaccination could do the same). Mot. at 2–3. And she argues that Respondent has conflated the standard for entitlement with reasonable basis, and that Petitioner's preexisting anxiety did not necessarily lead to the conclusion that her tremor was so caused (although the record clearly supports the conclusion that *treaters* proposed "anxiety" as the cause, albeit without relating it to any pre-vaccination symptoms). *Id.* at 8–9.

There is no dispute that this claim did not have sufficient evidentiary basis to *proceed*— that very proposition was the grounds for Petitioner's decision to request dismissal. The real issue posed by the present fees motion is whether Petitioner could have reached the same conclusion far sooner—perhaps even before the claim was filed—and thereby not incurred the nearly $30,000 in attorney's fees that her counsel now seeks to recover.

A brief overview of special master decisions reveals many cases in which tremors are alleged among other neurologic symptoms. Although some such cases have settled in a petitioner's favor, I have not identified a reasoned written decision in which a special master expressly found

---

[5] Petitioner also purports that a treater informed her that the tremor was likely vaccine-connected – but the attribution for this is derived not from a medical record but from Petitioner's own declaration. Reply at 5 (citing Ex. 1 at ¶ 11).

an isolated tremor syndrome was vaccine-caused (and Petitioner for her part identifies no such decisions in briefing her fees request). *See, e.g.*, *Hepler v. Sec'y of Health & Human Servs.*, No. 14-55V, 2016 WL 3571537 (Fed. Cl. Spec. Mstr. May 19, 2016) (decision on stipulation awarding damages to petitioner who suffered assorted neurological injuries, including tremors, after receipt of Hepatitis B vaccine). In addition, Petitioner is correct that a wide variety of neurologic injuries have been alleged to have been caused by the flu vaccine. Accordingly, the general concept that the flu vaccine could cause tremors is not properly rejected out of hand (in contrast, for example, to well-litigated claims arguing that autism is vaccine-caused).

But is there enough objective evidence *in this case* to find that Ms. Newport's claim had reasonable basis? Although the matter is close, I find there was just enough objective proof in support of the claim to find it had reasonable basis until Petitioner could not obtain an expert's assistance to substantiate the claim. Not only is there no dispute that Petitioner received the flu vaccine, but there is record support for the claimed injury. *See, e.g.*, Ex. 8 at 11. In addition, the timeframe between when Petitioner first reported the tremor to a treater (November) and the mid-September vaccination date is not so long to be medically unreasonable on its face. And Petitioner is correct in noting that claims that the flu vaccine caused a peripheral neurologic injury are common in the Program (and therefore it is foreseeable that experts exist who may legitimately agree a particular claim is scientifically supportable).

Admittedly, the record in this case augured an unsuccessful result. There are contemporaneous medical records from the time between vaccination and when Petitioner first reported a tremor that do not corroborate her assertion that the tremor began close enough in time to vaccination to support a causal relationship. In addition, it largely appears that Petitioner's treaters discounted the possibility that her tremor had a neurologic origin. Such points confirm why the Petition was appropriately dismissed, once Petitioner could not locate an expert willing to opine in her favor. But all of the above simply goes to the claim's *strength*, as opposed to whether it had any *objective basis* for proceeding. Reasonable basis is not a function of whether a claim is likely to succeed. *Di Roma*, 1993 WL 496981, at *1. It is thus appropriate to allow a fees award in this case.[6]

    C.    *Calculation of Petitioner's Fees and Costs Award*

Having determined that a fees award is appropriate herein even though the claim was not successful, I must now evaluate what a reasonable award would be. *Avera v. Sec'y of Health &*

---

[6] Despite my reasonable basis finding herein, I take note that the attorney invoices in this case reveal that counsel had possession of the matter for almost six months before it was filed, and was under no pressure of a looming limitations cut-off to act—giving counsel sufficient time to investigate the claim. Although in this particular matter I do not find that the case's reasonable basis could have been conclusively determined in that pre-filing timeframe such that counsel could have decided not to pursue the matter, in a case where record proof more obviously undercut the claim, a counsel's failure to take advantage of such a pre-filing timeframe could bulwark a determination that reasonable basis did not exist.

*Human Servs.*, 515 F.3d 1343, 1347–48 (Fed. Cir. 2008); Section 15(e)(1)(B). I find that the rates requested by the attorneys herein are consistent with what they have received in other Program cases (based upon the Office of Special Masters's rate schedule for in-forum attorneys).[7] *See, e.g.*, *Otto v. Sec'y of Health & Human Servs.*, No. 16-1144, 2018 WL 5782873, at *3 (Fed. Cl. Spec. Mstr. Oct. 5, 2018). And the work performed on this matter was reasonable (although the sum expended to litigate the fee question—nearly one *fourth* of the total billed to the matter before that time—is regrettable). I therefore award in full the requested attorney's fees. I also find that the costs requested are reasonable.

Accordingly, I hereby award final attorney's fees and costs in the total sum of $29,977.49, in a check payable to Petitioner and Andrew D. Downing, Esq. In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court **SHALL ENTER JUDGMENT** in accordance with the terms of this decision.[8]

**IT IS SO ORDERED.**

s/ Brian H. Corcoran
Brian H. Corcoran
Special Master

---

[7] The in-forum hourly rate fees schedules are available at http://www.uscfc.uscourts.gov/node/2914.

[8] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment if (jointly or separately) they file notices renouncing their right to seek review.